UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>v.<br><br>Brandon Lee St. Clair,<br><br>    Defendant. | Case No. 19-cr-297 (WMW/DTS)<br><br>**REPORT AND RECOMMENDATION** |

Ruth Shnider, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, Minnesota 55415, for Plaintiff.

Craig E. Cascarano, Cascarano Law Office, 150 South Fifth Street, Suite 2860, Minneapolis, Minnesota 55402, for Defendant.

### INTRODUCTION

Defendant Brandon Lee St. Clair faces an indictment charging him with one count of being a felon in possession of a firearm and two counts of possession with intent to distribute a controlled substance. In his present motion, St. Clair seeks to suppress all evidence law enforcement obtained by executing two search warrants. He argues that the probable cause for the first warrant, which authorized law enforcement to search a hotel room and a 2005 Honda Accord, came from a prior, unconstitutional search. He also asks the Court to conduct a four corners review of the second warrant, which authorized the search of a blue Chevrolet Cobalt, as he contends the affidavit does not establish probable cause. St. Clair's motion should be denied as to both search warrants.

# FINDINGS OF FACT

**I.      The First Warrant: The Hotel Room and the Honda Accord**

Early in the afternoon on June 10, 2019, Officer Jeffrey Thul of the Eagan Police Department was patrolling the area around the Microtel Inn in Eagan, Minnesota. Hr'g Tr., Jan. 9, 2020, at 3-5, Dkt. No. 25 (hereinafter "Hr'g Tr."). He noticed a black Honda Accord pulling out of the hotel's parking lot. *Id.* at 5. It appeared to Officer Thul that the Accord's rear window tints were darker than permitted by state law, so Officer Thul followed the car as it left the hotel lot. *Id.*

As Officer Thul followed the Accord, its driver made a U-turn and began heading toward the interstate. *Id.* at 6. As the Accord passed him, Officer Thul could see the driver through the Accord's rolled-down driver side window: a white male with short brown hair and tattoos on his arm. *Id.* Officer Thul guessed the man to be about 25 to 30 years old. *Id.* Officer Thul also ran the Accord's license plate number and learned the car was registered to a woman who lived in Hastings, Minnesota. *Id.* at 7.

Officer Thul also made a U-turn and activated his squad car's lights to stop the Accord's driver for the window tint violation. *Id.* Rather than stop, the driver continued onto the interstate and accelerated to normal highway speed. *Id.* Officer Thul, still following, then turned on his sirens. *Id.* The driver initially pulled over on the interchange between two interstates but Officer Thul, who considered this a dangerous place to stop, motioned the driver to continue forward. *Id.* at 7-8. The driver reentered traffic and accelerated quickly, passing cars and kicking up dirt from the shoulder of the road. *Id.* at 8-9. Officer Thul initially pursued, at one point reaching 100 miles per hour without closing the gap between him and the Accord. *Id.* at 9. Concerned about the safety of a high-speed chase on the busy interstate, Officer Thul cut off his pursuit. *Id.* at 9.

2

After ending the chase, Officer Thul asked his dispatch to inform other law enforcement agencies that he was looking for the Accord. *Id.* at 9. He then returned to the hotel where he had first encountered the vehicle and its driver and asked the employee at the front desk for the registration of people currently staying at the hotel. *Id.* at 9-10. Officer Thul observed that a black Honda Accord with the same license plate number as the one he had just pursued was listed to room 219. *Id.* at 10. That room was registered to a female, Natasha Lakedon.[1] *Id.* Officer Thul requested additional officers join him to go to room 219. *Id.* Officer Thul testified that he wanted to see if anybody was in the room and "freeze it" so he could apply for a search warrant for anything in the room that might identify the Accord's driver. *Id.* at 10-11. He also testified that he was concerned that someone might be in the room destroying evidence and that the way the driver fled from him suggested greater criminal activity than a simple window tint violation. *Id.* at 10-11.

While waiting for additional officers to arrive, Officer Thul learned that Inver Grove Heights police officers had found the Accord in the parking lot of an apartment complex, but the driver had already left the vehicle. *Id.* at 12; Gov't Ex. 1. One of the Accord's wheels was partially on the sidewalk. Gov't Ex. 1; Hr'g Tr. 16. The front left tire and rim were heavily damaged, and the rear left wheel appeared to be flat. Gov't Ex. 1; Hr'g Tr. 16. Officer Thul asked one of the Inver Grove Heights officers to secure the car and told her he would have the Accord impounded so they could apply for a search warrant. Hr'g Tr. 13.

---

[1] Several different spellings of Lakedon's last name appear throughout the record. Lakedon is the most consistent spelling in the search warrant affidavits.

3

Once backup arrived, and approximately 40 minutes after Officer Thul had ended his chase, officers went to room 219 of the hotel and knocked on the door. *Id.* at 17, 32-33. Natasha Lakedon answered the door while on her cellphone. *Id.* at 17. She declined Officer Thul's request to step inside the room to speak with her. *Id.* Officer Thul then told Lakedon she needed to step outside the room so he could ensure that nobody else was in the room until they had a warrant. *Id.* at 17-18. Officer Thul testified that he knew the driver was not in custody and that it was "[i]mprobable but possible" that the driver had gone back to the hotel room. *Id.* at 18, 33. Even if the driver himself had not returned to the hotel, he could phone back to anybody in the room to alert them police were likely coming. *Id.* at 18.

Officer Thul and another officer then swept the hotel room. They first announced for anybody else who might be in the room to come out. *Id.* When nobody did so, the officers entered the hotel room with their guns drawn and "checked spaces where . . . a human body could fit." *Id.* at 18-19. During this sweep, Officer Thul noticed a white glass bubble pipe with white residue on one of the room's two beds. *Id.* at 19. He also noticed a black pouch on the table next to the bed, which was unzipped and contained a baggy of a white crystal substance Officer Thul believed to be methamphetamine. *Id.* They found nobody else hiding in the room.

Once the room was secured, Officer Thul obtained a search warrant for both the hotel room and the black Honda Accord. *Id.* at 19; Gov't Ex. 2. His affidavit of probable cause incorporated the information above, including the items he observed during his sweep of the room. Officers then searched both the hotel room and the Accord. In the hotel room, police found a casino winnings receipt in St. Clair's name, drugs, and drug paraphernalia, and $7,900.00 in cash. Hr'g Tr. 20-21. Police found additional casino

4

receipts in St. Clair's name in both the center console and the trunk of the Accord. *Id.* at 21. They also found another bag of drugs on the front passenger floorboard and a loaded handgun in the trunk. *Id.*

## II.   The Second Warrant: The Chevrolet Cobalt

Police did not arrest St. Clair for another two months. The Minnesota Department of Corrections had issued a warrant for St. Clair in April 2019. Gov't Ex. 3 (Application at 1). Law enforcement subsequently received several anonymous tips about St. Clair, including information that he had a handgun and drugs and was driving a black Audi sedan. *Id.* (Application at 2). Officers also learned that St. Clair associated with Lakedon, who was a previous, or possibly current, girlfriend. *Id.*

On August 15, 2019, Jonahs Novak, an officer with the Minnesota Department of Corrections, surveilled Lakedon's listed address. *Id.* He observed St. Clair get into a black Audi sedan and leave, only to later return to the address with Lakedon. *Id.* About half an hour later, St. Clair, carrying a black satchel-type bag, left the home in a different car. *Id.*

Officer Novak resumed his surveillance the next day. He saw St. Clair pull up to Lakedon's address in a 2006 blue Chevrolet Cobalt and go into the house. *Id.* Sometime later, St. Clair came out of the house carrying a dog bed, a dog, and the same black bag as the previous day. *Id.* As St. Clair was putting the dog and the other items in the backseat of the Cobalt, officers moved in and arrested him. *Id.*

Officer Novak then applied for a search warrant for the Cobalt based upon this information, further noting that officers could see a glass pipe sitting in plain view in the Cobalt's center console and that they had found a glass pipe on St. Clair when they searched him following his arrest. *Id.* A Ramsey County District Court judge issued the warrant. *Id.* (Search Warrant). During the subsequent search, officers found, among other

things, several bags containing suspected drugs, $1,300.00 in cash, and two glass pipes. *Id.* (Receipt, Inventory and Return).

## CONCLUSIONS OF LAW

The Fourth Amendment to the United States Constitution guarantees a person's right "against unreasonable searches and seizures," and allows law enforcement to obtain a warrant only "upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const., amend. IV. Because the Fourth Amendment contains no enforcement provision, the Supreme Court created "an exclusionary rule that, when applicable, forbids the use of improperly obtained evidence at trial." *Herring v. United States*, 555 U.S. 135, 139 (2009) (citing *Weeks v. United States*, 232 U.S. 383, 398 (1914)). St. Clair challenges the constitutionality of both search warrants at issue. The Court examines each challenge in turn.

### I.    The Hotel Room and Honda Accord

St. Clair argues that, when police first entered the hotel room without a warrant, they violated his constitutional rights, and so any information from this warrantless entry cannot supply probable cause for the subsequent warrant to search the room and the Accord. Although the police may not generally enter a residence, including a properly rented hotel room,[2] without a warrant, they may do so under exigent circumstances. *United States v. Cisneros-Gutierrez*, 598 F.3d 997, 1004 (8th Cir. 2010). Although not the paragon of exigency, officers faced such circumstances here.

---

[2] The Government does not contest St. Clair's Fourth Amendment interest in the hotel room.

6

The exigent circumstances exception to the Fourth Amendment's warrant requirement "justifies immediate police action without a warrant if lives are threatened, a suspect's escape is imminent, or evidence is about to be destroyed." *Id.* (quoting *United States v. Ball*, 90 F.3d 260, 263 (8th Cir. 1996)). Such an exigency justified a warrantless entry when, considering "the circumstances that confronted police at the time of entry[,] . . . a reasonable, experienced police officer would believe evidence was in danger of removal or destruction." *Id.* (internal citations and quotations omitted). A "legitimate concern for the safety of law enforcement officers or other individuals" similarly constitutes exigent circumstances." *United States v. Hill*, 430 F.3d 939, 941 (8th Cir. 2005) (internal quotation omitted). The Government bears the burden to show both that an exigency existed and that "there was probable cause to search the residence." *Cisneros-Gutierrez*, 598 F.3d at 1004 (citing *United States v. Munoz*, 894 F.2d 292, 296 (8th Cir. 1990)).

Considering the totality of the circumstances known to Officer Thul and the other police when they first approached room 219, the police were justified in entering the hotel room without a warrant. As to the exigency, the Eighth Circuit's opinion in *United States v. Carter*, 854 F.2d 1102 (8th Cir. 1988), is instructive. There, police were investigating a drug operation and had already arrested three individuals that day. *Id.* at 1104. A fourth suspect had called an undercover officer and agreed to sell him drugs, so police went to the motel where they knew the suspect was staying. *Id.* The motel's front desk paged the suspect and officers arrested her when she left her room to answer the call. *Id.* When police asked if anyone else was in the motel room, the suspect "said no, but told them that they could look if they wanted." *Id.* at 1104-05. Officers then "made a protective sweep search" and "saw approximately seven (7) ounces of cocaine on a table in the

7

room[,]" but removed nothing until they received the warrant. *Id.* at 1105. The Eighth Circuit held the initial search to be lawful on two separate grounds, the first being the suspect's apparent consent to the search. *Id.* at 1106. But the court also concluded that the officers' initial entry into the motel room was justified because "exigent circumstances exist where there is no knowledge as to other occupants and there is a danger of evidence destruction." *Id.* at 1107. Because police could not know if other individuals were involved in the drug operation or even possibly were in the hotel room, the officers' initial sweep to check and secure the room was permissible. *Id.*

In the present case, officers had similar reason to fear the destruction of evidence or a potential threat to their safety during a swiftly developing investigation. Officer Thul had returned to the hotel after ending a high-speed chase of the Accord and its driver, a male, for a potential window tint infraction. The nature of the flight alone supports a reasonable suspicion that a greater level of criminal activity was afoot and so greater caution warranted. Upon viewing the hotel's guest registration list, Officer Thul saw that a female guest had registered that same car to room 219. From this information, officers could reasonably suspect that more than one person was staying in the hotel room, including the Accord driver who remained at large, and perhaps others. In the approximately 40 minutes since Officer Thul had ended the chase, the driver could have either made his way back to the hotel or called back to anyone else in the hotel room and tipped them off to the impending visit by law enforcement. That Lakedon answered the door while on her cellphone makes the reasonableness of this concern readily apparent. Even after officers removed Lakedon from the room, they could not know the hotel room was secure, if only because the driver remained at large. Given these circumstances, the officers reasonably believed that an individual could be inside the hotel room, ready to

8

destroy evidence or ambush officers in the hallway outside the door. Finally, although St. Clair challenges the officers' warrantless entry and not the scope of their sweep, the record indicates the sweep was limited to the exigency created by the circumstances: ensuring nobody else was in the room. *United States v. Pierson*, 219 F.3d 803, 806 (8th Cir. 2000).

The officers also had probable cause to search the hotel room before they entered and saw any suspected drug paraphernalia. Probable cause exists when, based upon the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Johnson*, 528 F.3d 575, 579 (8th Cir. 2008) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). Here, the driver of the Accord had led Officer Thul on a high-speed chase, and it is a felony under Minnesota law to flee a peace officer in a motor vehicle. Minn. Stat. § 609.487. The Accord was registered to room 219 at the hotel where Officer Thul had first seen it leaving the hotel's parking lot. Based on these facts alone, there was a fair probability that evidence of the driver's identity would be in the hotel room, thus supplying probable cause.[3]

Because officers both faced exigent circumstances and had probable cause to search the room, their initial, limited entry into the hotel room did not violate the Fourth Amendment and St. Clair's motion to suppress the subsequent search of the room and the Accord should be denied. As such, there is no need to reach the Government's alternative arguments, including whether the Accord was abandoned.

---

[3] Even if there were no exigency, the existence of probable cause prior to the initial entry, coupled with Officer Thul's uncontroverted testimony that he intended to seek a warrant for identifying information before he entered the hotel room, would render the subsequent warrant an independent source. *E.g.*, *United States v. Duran*, 109 F. Supp. 3d 1093, 1101 (D. Minn. 2015) (discussing the application of the independent source doctrine to warrants obtained after an unlawful entry).

## II.    The Chevrolet Cobalt

St. Clair also raises a "four-corners" challenge to the warrant authorizing police to search the Chevrolet Cobalt St. Clair was using when officers arrested him. He submits that Officer Novak's affidavit lacks probable cause to search the car, although he does not identify any specific deficiency. A search warrant is supported by probable cause if, "based on the totality of the circumstances set forth in the application and affidavits, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Johnson*, 528 F.3d at 579. "Judges may draw reasonable inferences from the totality of the circumstances in determining whether probable cause exists to issue a search warrant . . . ." *United States v. Alexander*, 574 F.3d 484, 490 (8th Cir. 2009) (internal quotations omitted). Because a challenged search warrant is presumptively valid, "the duty of a reviewing court is simply to ensure that the [issuing court] had a 'substantial basis . . . for concluding' that probable cause existed." *Gates*, 462 U.S. at 238-39.

Contrary to St. Clair's contention, Officer Novak's affidavit supplies ample probable cause to search the Cobalt. Law enforcement received several anonymous tips about St. Clair, including that he had handguns and large amounts of drugs, and that he was using a black Audi sedan. When officers surveilled Lakedon's address, they observed St. Clair using the sedan, thereby corroborating part of the tips. On the day of his arrest, St. Clair pulled up to Lakedon's house in the Cobalt. When officers arrested him, St. Clair was loading items, including a black bag, into the back of the car. Officers saw a glass pipe in plain view in the center console of the Cobalt and took another glass pipe with white reside out of St. Clair's pocket incident to his arrest. From these facts, the issuing judge had ample probable cause to believe that additional paraphernalia and drugs may

be in the Cobalt St. Clair was driving. St. Clair's motion to suppress should be denied as to the search of the Chevrolet Cobalt.

## RECOMMENDATION

For the reasons set forth above, the Court RECOMMENDS THAT Defendant Brandon Lee St. Clair's Motion to Suppress Evidence Obtained Through Illegal Search [Dkt. No. 18] BE DENIED.

Dated: April 27, 2020              s/David T. Schultz
                                                             DAVID T. SCHULTZ
                                                             U.S. Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set for in LR 72.2(c).