UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| United States of America, | Case No. 19-cr-0297 (WMW/DTS) |
| Plaintiff, | |
| v. | **ORDER ADOPTING REPORT AND RECOMMENDATION** |
| Brandon Lee St. Clair, | |
| Defendant. | |

---

This matter is before the Court on the April 27, 2020, Report and Recommendation (R&R) of United States Magistrate Judge David T. Schultz. (Dkt. 34.) The R&R recommends that Defendant Brandon Lee St. Clair's motion to suppress evidence, (Dkt. 18), be denied. St. Clair filed timely objections to the R&R. Plaintiff United States of America filed a timely response. For the reasons addressed below, the Court overrules St. Clair's objections and adopts the R&R.

## BACKGROUND

St. Clair was indicted on one count of unlawful possession of a firearm by a felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and two counts of possession with intent to distribute a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 841(b)(1)(C). The magistrate judge held a hearing on the matter at which Eagan Police Officer Jeffrey Paul Thul testified regarding the investigation of this case.

On June 10, 2019, Officer Thul observed a black Honda Accord with tinted dark rear windows leave the parking lot of the Microtel Inn in Eagan, Minnesota. After determining that the tinted rear windows were darker than permitted by state law, Officer Thul followed the car as it left the Microtel lot. As Officer Thul followed the vehicle, the driver made a U-turn and Officer Thul observed, through the vehicle's rolled-down driver side window, a white male with short brown hair and tattoos who was later identified as to St. Clair. Officer Thul ran a vehicle registration check on the Honda's license plate and learned that the car was registered to a woman who lived in Hastings, Minnesota.

As the Honda made the U-turn, Officer Thul activated his squad car's lights so as to initiate a traffic stop for an equipment violation. St. Clair did not stop and instead continued onto the interstate. Officer Thul then activated his sirens. St. Clair pulled over on the interchange. For traffic-safety reasons, Officer Thul motioned for St. Clair to continue forward. St. Clair reentered traffic and accelerated quickly. Officer Thul pursued the vehicle, traveling up to approximately 100 miles per hour without closing the gap. After evaluating the safety of a high-speed chase on a busy interstate, Officer Thul terminated his pursuit of the vehicle.

Officer Thul next requested that the radio dispatcher inform other law enforcement agencies of his search for the Honda. He returned to the Microtel where he learned that the vehicle he pursued was affiliated with room 219 which was registered to Natasha Lakedon. Officer Thul requested assistance from additional officers prior to going to room 219. Officer Thul testified that his goals were to determine whether the room was occupied and to "freeze it," obtain a search warrant for the room, and obtain information

to identify the Honda's driver.  Officer Thul testified that he wanted to "freeze" the room because he was concerned that evidence of the Honda driver's identity might be destroyed by an accomplice.  Officer Thul also testified that the Honda driver's flight led him to suspect the existence of other criminal activity that might pose safety concerns.

While waiting for additional officers to arrive at the Microtel, Officer Thul learned that Inver Grove Heights police officers found the Honda.  The vehicle was secured and impounded so that Officer Thul could apply for a search warrant.  After additional officers arrived at the Microtel, Officer Thul and the officers went to room 219.  Lakedon answered the door while talking on her cellphone.  She declined Officer Thul's request to enter the room to speak with her.  Officer Thul then directed Lakedon to step outside of the room to permit him to ensure that other individuals were not in the room while he waited to obtain a search warrant.  Officer Thul testified that he knew the Honda's driver was not in custody and could have called the occupant of room 219 to warn her that police likely were coming.  Officer Thul also testified that it was "[i]mprobable but possible" that the driver had returned to the hotel room.

Officer Thul and one other officer searched the hotel room and "checked spaces where . . . a human body could fit."  During the search, Officer Thul observed a white glass bubble pipe with white residue on a bed.  Officer Thul also observed an unzipped black pouch that contained a plastic bag holding a white crystal substance that he believed to be methamphetamine.  After the room was secured, Officer Thul obtained a search warrant for the hotel room and the Honda.  During a subsequent search of the hotel room, officers retrieved a receipt with St. Clair's name, drugs, drug paraphernalia,

and $7,900 in cash. When searching the Honda, the officers retrieved additional receipts in St. Clair's name from the center console and trunk, a bag of drugs from the front passenger floorboard, and a loaded handgun from the trunk.

After securing an arrest warrant in April 2019, law enforcement investigators received several anonymous tips about St. Clair. These tips included information that he possessed handguns and drugs and drove a black Audi sedan.

On August 15, 2019, Minnesota Department of Corrections Officer Jonahs Novak conducted surveillance of Lakedon's home, during which Officer Novak observed St. Clair leave the address in a black Audi sedan and later return with Lakedon. Then St. Clair left Lakedon's home carrying a black satchel bag and departed in a different vehicle. The next day, Officer Novak observed St. Clair arrive at Lakedon's home in a 2006 blue Chevrolet Cobalt. St. Clair entered the home and later departed carrying a dog bed, dog, and black satchel bag. Police arrested St. Clair as he loaded the vehicle with the items.

In his application for a search warrant for the Chevrolet Cobalt, Officer Novak stated that officers observed a glass pipe in plain view on the center console, and they retrieved a glass pipe from St. Clair's pocket during his arrest. After obtaining the search warrant, officers retrieved several bags of suspected drugs, two glass pipes, and $1,300 in cash from the Chevrolet Cobalt.

St. Clair moves to suppress the evidence obtained during the execution of the search warrants. St. Clair argues that there was no probable cause for the first warrant, which authorized the search of the hotel room and the Honda. St. Clair also seeks

suppression on the grounds that the affidavit in support of the second search warrant, which authorized the search of the Chevrolet Cobalt, failed to establish probable cause. The R&R recommends denying St. Clair's motion to suppress.

## ANALYSIS

### I. St. Clair's Objections to the April 27, 2020 R&R

St. Clair objects to the magistrate judge's recommendation to deny his motion to suppress evidence. St. Clair does not contest the findings of fact in the R&R, but he disagrees with the R&R's legal conclusions. The Court reviews *de novo* any aspect of the R&R to which St. Clair objects. 28 U.S.C. § 636(b)(1)(C); Fed. R. Crim. P. 59(b)(3); LR 72.2(b)(3); *accord Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (per curiam).

The Fourth Amendment to the United States Constitution guarantees the "right of the people to be secure in their person, houses, papers, and effects, against unreasonable searches and seizure," and allows a law enforcement officer to obtain a warrant only "upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. As the Fourth Amendment contains no enforcement provision, the Supreme Court of the United States has created an exclusionary rule that, when applicable, precludes the use at trial of improperly obtained evidence. *Herring v. United States*, 555 U.S. 135, 139 (2009) (citing *Weeks v. United States*, 232 U.S. 383, 398 (1914)). Evidence obtained during a search or seizure conducted in violation of the Fourth Amendment must be suppressed. *Segura v. United States*, 468 U.S. 796, 804 (1984). A warrantless entry by a

law enforcement officer is permissible when exigent circumstances exist and there is probable cause to search a residence. *United States v. Cisneros-Gutierrez*, 598 F.3d 997, 1004 (8th Cir. 2010).

### A. Exigent Circumstances to Justify the Warrantless Entry of Room 219

St. Clair asserts that the United States failed to establish the existence of exigent circumstances to justify the warrantless entry of room 219 at the Microtel. St. Clair argues that "law enforcement could not possibly have reasonably believed that there was . . . any evidence [that] might be destroyed." St. Clair further asserts that, because law enforcement officers lacked any reasonable belief that other occupants were inside the room, the warrantless entry was not supported by exigent circumstances.

The exigent circumstances exception to the Fourth Amendment's warrant requirement "justifies immediate police action without obtaining a warrant if lives are threatened, a suspect's escape is imminent, or evidence is about to be destroyed." *Id.* (quoting *United States v. Ball*, 90 F.3d 260, 263 (8th Cir. 1996)); *United States v. Hill*, 430 F.3d 939, 941 (8th Cir. 2005) (explaining that a "legitimate and reasonable concern for the safety of" law enforcement officers constitutes exigent circumstances). "[E]xigent circumstances exist where there is no knowledge as to other occupants [in a room] and there is a danger of evidence destruction." *United States v. Carter*, 854 F.2d 1102, 1107 (8th Cir. 1988).

In *Carter*, officers investigated a drug operation in which three individuals had already been arrested. *Id.* at 1104. There, a suspect agreed to sell an undercover officer drugs. *Id.* Law enforcement officers arranged to meet the suspect at a motel where the

6

suspect was staying. *Id.* The motel paged the suspect, and the officers arrested the suspect as she left her room to answer the call. *Id.* When asked if anyone else was in the room, the suspect said no and granted the officers permission to confirm the veracity of her response. *Id.* at 1104–05. During a protective sweep of the location, the officers observed cocaine on a table. *Id.* at 1105. But the officers removed nothing from the room until they received a warrant. *Id.* The United States Court of Appeals for the Eighth Circuit held that the initial search was lawful because of the suspect's consent to search. *Id.* at 1106. And the officers' entry into the motel room also was justified because, despite the suspect's assurances that the room was empty, "exigent circumstances exist where there is no knowledge as to other occupants and there is a danger of evidence destruction." *Id.* at 1107. Because the officers could not know whether other individuals involved in the drug operation were in the motel room, the officers' entry and search to check and secure the room was permissible. *Id.*

Here, as in *Carter*, Officer Thul feared both the destruction of evidence (including evidence as to the driver of the Honda) and a potential threat to the safety of himself and the other officers. The nature of St. Clair's flight, a high-speed interstate chase, supports a reasonable suspicion that serious criminal activity was afoot. Officer Thul concluded that the vehicle he pursued on the interstate was registered to room 219 and, with this information, he reasonably determined that at least one other individual was staying in the hotel room. Officer Thul concluded that St. Clair could have returned to the hotel or called back to the hotel room to warn the occupants that officers may be arriving. Lakedon, the registered occupant of the room, answered the door while engaged in a

7

conversation on her cellphone. The reasonableness of Officer Thul's concern is apparent. Even after the officers removed Lakedon from the room, the officers did not know whether the room was secure because the location of the Honda's driver remained unknown. Officer Thul reasonably believed that another individual could be in the hotel room either destroying evidence or preparing to ambush the officers. These exigent circumstances justified the warrantless entry into room 219. St. Clair's objection to the denial of his motion to suppress on this basis is overruled.

      B.      **Probable Cause to Search Room 219 Prior to Obtaining a Search Warrant**

St. Clair also objects to the R&R's conclusion that there was probable cause to search the hotel room prior to obtaining a search warrant. St. Clair argues that the fact that the Honda involved in the high-speed chase was registered to room 219 did not establish probable cause for the law enforcement officers to enter room 219 because there was not a fair probability that evidence of the driver's identity would be at that location.

A warrantless entry and search of a hotel room is permissible when exigent circumstances exist and officers have probable cause to search. *Cisneros-Gutierrez*, 598 F.3d at 1004. Probable cause to search a location exists when, based on the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Johnson*, 528 F.3d 575, 579 (8th Cir. 2008) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

In this instance, St. Clair led Officer Thul on a high-speed chase that ended when Officer Thul determined that it was unsafe to continue his pursuit of the vehicle. Fleeing

a peace officer in a motor vehicle is a felony offense. Minn. Stat. § 609.487, subdiv. 3. St. Clair remained at large and evidence of his identity was needed. Officer Thul returned to the Microtel, the location where he initially observed St. Clair depart. At the Microtel, Officer Thul learned that the vehicle was registered to room 219. Under the totality of these circumstances, there was a fair probability that evidence of the driver's identity would be found in the hotel room. St. Clair's objection to the denial of his motion to suppress the evidence obtained at that location is overruled.

### C. Probable Cause to Search the Chevrolet Cobalt

St. Clair also objects to the R&R's conclusion that probable cause exists within the four corners of the search warrant that authorized the search of the Chevrolet Cobalt or that the evidence in the supporting affidavit "give[s] rise to the conclusion that based upon the totality of the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence would be found inside the car."

When evaluating a search warrant, "the duty of a reviewing court is simply to ensure that the [issuing court] had a 'substantial basis for . . . concluding' that probable cause existed." Probable cause exists if, "based on the totality of the circumstances set forth in the application and affidavits, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " *Johnson*, 528 F.3d at 579 (quoting *Gates*, 462 U.S. at 238). Reasonable inferences may be drawn from the totality of the circumstances when a court is determining whether probable cause exists to issue a search warrant. *United States v. Alexander*, 574 F.3d 484, 490 (8th Cir. 2009).

9

Officer Novak's search warrant affidavit includes numerous facts relevant to whether law enforcement officers had probable cause to search the Chevrolet Cobalt. After obtaining a warrant for St. Clair's arrest on a drug-possession charge, law enforcement officers received several anonymous tips about St. Clair. These tips included that he possessed handguns, large amounts of drugs, and that he drove a black Audi sedan. When law enforcement officers surveilled Lakedon's address, they observed St. Clair driving the Audi sedan and corroborated other aspects of the tips they received. On the day of his arrest, St. Clair arrived at Lakedon's house in the Chevrolet Cobalt. Officers arrested St. Clair as he was loading items, including a black bag, into the car. Officers observed in plain view a glass pipe in the center console of the Chevrolet Cobalt. And they removed another glass pipe coated with white residue from St. Clair's pocket during a search incident to his arrest. Based on these facts, there was a substantial basis on which to conclude that there was probable cause to believe that additional paraphernalia and drugs would be located in the Chevrolet Cobalt. Accordingly, St. Clair's objection to the magistrate judge's recommendation to deny St. Clair's motion to suppress the evidence seized for lack of probable cause to search the Chevrolet Cobalt is overruled.

## II.    Clear-Error Review

Because St. Clair does not object to any other aspect of the R&R, the Court reviews the remainder of the R&R for clear error. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Crim. P. 59; *United States v. Newton*, 259 F.3d 964, 966 (8th Cir. 2001); *accord Grinder*,

73 F.3d at 795. Having carefully performed this review, the Court finds no clear error and adopts the R&R.

## ORDER

Based on the April 27, 2020 R&R, the foregoing analysis, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED**:

1. Defendant Brandon Lee St. Clair's objections, (Dkt. 35), to the April 27, 2020 R&R, (Dkt. 34), are **OVERRULED**.

2. The April 27, 2020 R&R, (Dkt. 34), is **ADOPTED**.

3. Defendant Brandon Lee St. Clair's motion to suppress, (Dkt. 18), is **DENIED**.

Dated: June 19, 2020                                    s/Wilhelmina M. Wright
                                                        Wilhelmina M. Wright
                                                        United States District Judge